**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CASE NO.: 1:23-CR-146 |
| v. | : | |
| | : | |
| | : | |
| MARK BLACK, | : | |
| | : | |
| Defendant. | : | |

## MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER

Pursuant to 18 U.S.C. Section 3145(b), Defendant Mark Black ("Mr. Black") hereby respectfully moves this Court to revoke the Order of Detention Pending Trial issued by Judge Anderson, ECF Doc. 18. Pretrial Services has recommended release, and for the reasons given by Pretrial Services and those reasons provided here. Mr. Black has no prior record, voluntarily surrendered to the arrest warrant, has a suitable third-party custodian in Ms. Geneveive Holm, who is a retired, career, 40-year trial attorney with the Department of Justice, who also served as a Magistrate, and can be monitored either with computer/internet-monitoring software or a requirement that he not possess or use any device with access to the internet. We respectfully ask the Court to follow the recommendation of Pretrial Services and permit Mr. Black to be in the community, with conditions of release. In further support of this motion, counsel avers as follows.

### I. Procedural Background

On June 6, 2023, a search warrant was executed on the home of Mark Black in connection with allegations regarding a conspiracy to produce child pornography. Subsequent to that seizure,

1

Mr. Black voluntarily self-referred to counseling with Tracey Guard, a certified sex offender treatment provider (CSOTP). Ms. Guard writes in her letter that:[1]

> Mr. Mark Black was self-referred and began seeing me on June 29, 2023 after a search warrant was conducted on his residence. Mr. Black attended weekly individual sessions until August 8, 2023 at which time he began weekly group treatment and biweekly individual sessions. The group consists of eight to ten men who have displayed problematic or illegal sexual behavior.
> …
> Mr. Black has been fully engaged in the treatment process. He has demonstrated active participation in the group, identified appropriate and realistic treatment goals for himself and brings relevant topics to the group for discussion. Additionally, Mr. Black has completed all written assignments given to him, and requested additional treatment material. When examining an individual's risk to re-offend, both static risk factors and dynamic risk factors are reviewed. Static risk factors are those variables that an individual cannot change. Dynamic risk factors are those variables that the individual can change over time, generally in response to treatment intervention. The third area that is examined is protective factors. Protective factors are strengths that build resilience and can mitigate risk. Mr. Black has numerous factors that are associated with a lower likelihood of negative outcomes. These factors will also assist in the probability of him being successful in treatment. In other words, rather than focusing solely on deficits, Mr. Black has several strengths in the protective domains that should be considered. Mr. Black has the capacity for emotional closeness as demonstrated by his relationship with his wife and sons, he has positive relationships with other law-abiding adults both socially and professionally. He has shown motivation for treatment and has respectful attitudes toward authority. Mr. Black has shown effective problem-solving skills even in the face of crisis, and prior to his legal involvement he maintained consistent employment which he found meaningful. While Mr. Black has only been in treatment a short time, he has shown a genuine interest in furthering his understanding of the factors that led him to offend as well as implementing change in his life to make better decisions in the future. **Coupled with his protective factors, Mr. Black is an excellent candidate for continued outpatient treatment**.

(emphasis added)

---

[1] *See* Sealed Exhibit A

Mr. Black also submitted to a risk assessment with Dr. Boyd, who concludes on page 8 of her report that:[2]

> **The information I reviewed indicated Mr. Black would likely be compliant with the requirements of community supervision**. He appears capable of understanding the requirements and restrictions, of communicating with relevant personnel, of managing his own conduct/behavior, and seeking additional support from mental health professionals if needed. He did not appear to have active compulsions or obsessive behavior related to internet use, or a lack of appreciation for the seriousness of his circumstances. In my opinion, pretrial incarceration would not be supportable from a risk management perspective, and rehabilitation efforts that have already borne fruit would be interrupted. **Standard pretrial supervision arrangements would appear to be suitable for Mr. Black, including restrictions and monitoring of any electronic communications, limited access to electronic devices, maintaining abstinence from substance use, attending treatment appointments, and no unsupervised contact with unrelated minors**. I did not review information showing that he posed a threat to them, and his wife stated that he had never hurt the children and she had no concerns that he would. The information I have reviewed to date is not supportive of the view that Mr. Black is at significant risk of harming his wife, his children, or members of the community if he were to be released to pretrial supervision.

(emphasis added)

Weeks before the indictment, undersigned counsel spoke with the government, who indicated it was their intention to seek an indictment of Mr. Black, charging him with conspiracy to produce child pornography. Mr. Black was aware of the indictment and the seriousness of the charges, the mandatory minimum of fifteen years in prison, and the sentencing guidelines; and nonetheless made arrangements with counsel to self-surrender. He provided counsel with his passport and electronic devices, and undersigned counsel surrendered him at the Court this past Friday.

---

[2] *See* Sealed Exhibit B

On September 18, a detention hearing was held before Judge Anderson. The government proceeded by proffer and presented the Court with three exhibits. For this Court's convenience, counsel attaches the government's exhibits to this motion.[3] The defense largely did not contest the government's evidence for purposes of the hearing. The defense contended that there were conditions that could reasonably assure the safety of the community such that preventive detention was unnecessary.

The Court found that Mr. Black had rebutted the presumption against detention, but nonetheless overruled the recommendation of Pretrial Services and detained him. The Court found that Mr. Black was not a flight risk, but was a safety risk. More specifically, the Court noted that the "weight of evidence against the defendant is strong," and the defendant was "subject to lengthy period of incarceration if convicted." The Court also wrote that:

> As proffered by the government, defendant has a long history involving the alleged activity, he had a leadership role in the alleged conspiracy, and he has taken affirmative steps to entice several minors over an extended period of time to produce pornographic material though false statements. The court is not satisfied that given defendant's technical knowledge and capabilities that he would not be in a position to get around any restrictions on access to computers or the internet. While there was no evidence of any physical contact presented during the hearing, the government did produce disturbing evidence concerning defendant's desires relating to physical contact with minors.[4]

---

[3] They are attached as Exhibit C. Exhibit 2 was an audio-recording of part of a Skype conversation played in Court. The government provided a transcript of that Skype audio-recording on the second page of Exhibit 1. This Court therefore has the content of that exhibit as well.

[4] Mr. Black has had no inappropriate physical contact with minors. The evidence of a desire for physical contact with minors appears to derive from Exhibit 3, some April 2022-2023 Snapchat messages and from Exhibit 2, the Skype audio-recording. At the hearing, counsel (and perhaps the Court) understood that evidence each to be contacts that Mr. Black allegedly had with minors. After the hearing and review of the government's hearing exhibits, counsel now understands that the Exhibit 2 audio recording was of a conversation between Mr. Black and a transgendered adult male, who was openly playing the role of a minor and that Exhibit 3 is of a conversation with a girl who met Mr. Black on a platform that required all participants to identify themselves as at

4

## II. Argument

Mr. Black defendant is plainly not a flight risk. He was aware of the prospective indictment, the mandatory minimum, and the guidelines weeks before the grand jury met and an arrest warrant issued. Knowing this, he made arrangements in advance to surrender his passport and electronic devices to counsel, and also to self-surrender himself to the arrest warrant which occurred this past Friday. Neither Pretrial nor the Court found him to be a flight risk, and the government did not argue it.

Nonetheless many of the considerations referenced by the Court relate more strongly to this basis of detention: in particular, the weight of the evidence, the length of time he would be facing, and the nature and circumstances of the offense itself, as would bear upon an eventual prospective sentence. However, this information was all known to the defendant weeks before the indictment was issued, and he nonetheless self-surrendered.

With respect to danger to the community, the Court concluded that "given defendant's technical knowledge and capabilities that he would not be in a position to get around any restrictions on access to computers or the internet." Counsel have greater confidence in the ability of the combination of Pretrial Services and a credible third-party custodian to ensure compliance. Subsequent to the search of his residence, Mr. Black self-referred to treatment, and, as documented in the letters, has been taking treatment seriously. The treatment is ongoing, not complete, and it helps him avoid taking action on the types of impulses, which led to the charges here. There is no evidence that Mr. Black has been engaged in any illegal conduct subsequent to the issuance of the

---

least eighteen years old. The government stated that it had determined this girl was in fact, thirteen or fourteen years old.

search warrant months ago, and he has not been engaged in any such conduct. To the contrary, he has focused on treatment, as he will continue to do.

Finally, although counsel believe his wife would make a suitable third-party custodian, at a minimum Ms. Holm is a suitable third-party custodian. With respect to living in his home, there is no evidence of any misconduct involving his minor children, who are male teenagers. And with respect to Ms. Holm, she is a former federal prosecutor who spent her 40-year career at the Department of Justice, and then as a state court magistrate. She appeared in Court today with Mr. Black's wife, and both were prepared to serve as third-party custodian. The combination of Pretrial Services monitoring as it routinely and successfully does, home confinement with GPS tracking, and a suitable third-party custodian, are such that the Government did not meet with burden by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. To the extent that the Court has any concerns with Mr. Black's somehow being able to avoid internet monitoring by Probation and the third-party guardian, the Court can order that Mr. Black have no ability to access the internet at all. The guardian can ensure that he does not have access to a computer, tablet, smartphone, etc. If she sees one, the possession itself would be a violation. She will not see one. The government has a wealth of digital data relating to Mr. Black, and the charged conspiracy is from 2019-2021. The preventive detention legal standards, together with Mr. Black's efforts to respond to his legal situation and to take care of family affairs while he can, dictate his release at this time.

Finally, counsel is not remiss that some could take a very practical look at Mr. Black's situation. On a practical level, while it may be argued that Mr. Black is potentially looking at a 15, or more, year sentence, so why not just serving it now, the defense offers two rejoinders. First,

this is not the legal standard. And second, Mark Black is 50 years old, and the remaining months may be his last opportunity to see his teenage sons and make final arrangements to secure the stability of his family before he is incarcerated for a lengthy period of time. This time in the community is important in order to make sure all necessary appropriate legal and financial steps for his family for many years to come, may be his last opportunity in his life to spend some meaningful time with his family, and will with appropriate conditions not be a danger to the community.

## CONCLUSION

For these reasons, Counsel for Mr. Black respectfully requests that the Court revoke or amend the Order of Detention Pending Trial.

This 18th day of September, 2023.

Respectfully submitted,

Mark Black
By Counsel

/s/
Cary Citronberg
John Zwerling
JOHNSON/CITRONBERG, P.L.LC.
421 King Street
Alexandria, VA 22314
703-684-8000 (office)
703-684-9700 (fax)
cary@jc-attorney.com

/s/ Edward J. Ungvarsky
Edward J. Ungvarsky, # 83014
Ungvarsky Law, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
Tel: 571-207-9710

Cell: 202-409-2084  
Fax: 571-777-9933  
ed@ungvarskylaw.com  
Attorney for Defendant

**CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing Motion with the Clerk of Court in PDF format.

/s/
Cary Citronberg  
John Zwerling  
JOHNSON/CITRONBERG, P.L.L.C.  
421 King Street  
Alexandria, VA 22314  
703-684-8000 (office)  
703-684-9700 (fax)  
cary@jc-attorney.com